25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Danny CORDOVA-MADRID, Defendant-Appellant.
 No. 93-2168.
 United States Court of Appeals, Tenth Circuit.
 May 20, 1994.
 
 ORDER AND JUDGMENT[1]
 Before WHITE, Associate Justice (Ret.);[2] SEYMOUR, Chief Judge; and MOORE, Circuit Judge.
 
 
 1
 Danny Cordova-Madrid appeals the denial of a motion to suppress which preceded his conditional guilty plea to possession with intent to distribute less than 50 kilograms of marijuana. We affirm.
 
 
 2
 On September 4, 1992, about 9:00 a.m., Mr. Cordova was driving his 1978 Pontiac north on Highway 11 toward Deming, New
 
 
 3
 Mexico. The location is about 20 miles north of the Mexican border.
 
 
 4
 As Mr. Cordova travelled north, Border Patrol agents heading south spotted his vehicle. The agents, aware that the area was "notorious" for alien and drug smuggling,[3] particularly by people using "older cars," noted defendant "acted surprised" to encounter them. As their vehicles closed, one officer, who had "a pretty good view of him," noted Mr. Cordova "leaned a little bit forward and acted, like surprised. His eyes were a little bit open, you know." The agent, whose suspicions were kindled by defendant's reaction, then noticed defendant's auto was "riding a little bit low. It was significantly low to the ground, and that aroused my suspicion more." The officer testified seeing the auto riding low made him suspect it might be carrying illegal aliens because he had been involved in cases in which smugglers had "actually loaded people in the trunk."
 
 
 5
 Because of these circumstances, the officer decided to stop defendant's auto. Immediately after pulling to the roadside, defendant got out of his car and approached the agents. The agents thought that act singular as "usually, when somebody exits the vehicle it is because they don't want you to get near the car, so they come to you."
 
 
 6
 An agent asked Mr. Cordova "what his citizenship was," to which he answered, "Yeah." Mr. Cordova seemed "real nervous" and "appeared scared." His hands were shaking so badly that he had difficulty producing his identification. Additionally, his lips were dry and his eyes were widened and watery.
 
 
 7
 One agent looked briefly into the car without seeing anything unusual and "thought he might be carrying something in the trunk." The agent asked, "Do you mind if I search your trunk?" Defendant replied affirmatively and gave the agent the car keys.
 
 
 8
 As the agent approached the car, Mr. Cordova stated, "Oh you don't have to do that." When asked why, Mr. Cordova replied, "Oh, I have a load ... marijuana." The agent then opened the trunk and discovered over ninety pounds of the substance.
 
 
 9
 The district court denied the motion to suppress based on the lawfulness of the stop. Making findings of the preceding facts, and determining "the officers' testimony is credible," the court concluded because of the notoriety of the area in which the stop occurred, the direction of defendant's travel, the proximity of the border, defendant's surprise and his use of an "older car," and the agents' belief the vehicle "was riding low,"[4] the stop was justified. The court also found Mr. Cordova's conduct following the stop furthered their suspicions and justified the request to look in the trunk. Consent was freely and voluntarily given, the court added.
 
 
 10
 At sentencing, Mr. Cordova requested a downward departure based on aberrant behavior and minor participation. The court denied the request.
 
 
 11
 Defendant recognizes a reviewing court is bound by the trial court's findings of fact not clearly erroneous, and we must consider the evidence in the light most favorable to the government. Nevertheless, relying upon United States v. Brignoni-Ponce, 422 U.S. 873 (1975), Mr. Cordova contends the agents did not have sufficient knowledge to allow them to effect the stop. Against the Brigoni-Ponce factors and considering the totality of the circumstances, Mr. Cordova urges the agents had no objective facts to support anything but a hunch.
 
 
 12
 An investigatory stop does not need to be supported by probable cause, United States v. Espinosa, 782 F.2d 888 (10th Cir.1986), although Border Patrol "officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle[ ] contain[s] aliens who may be illegally in the country," Brignoni-Ponce, 422 U.S. at 884. However, "an investigatory stop is justified when an officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.' " United States v. Monsisvais, 907 F.2d 987, 990 (10th Cir.1990), quoting Terry v. Ohio, 392 U.S. 1, 30 (1968).
 
 
 13
 If taken alone, no one of the factors found by the district court would give rise to reasonable suspicion; however, when taken together they form a matrix of fact which readily suggests that conclusion. Although defendant suggests the agents made their decision solely on the defendant's look of surprise and the tilt in the rear of his car, the district court found otherwise. The record supports that finding, and we agree with the district court's analysis.
 
 
 14
 Defendant contends the search exceeded the scope of the investigatory detention. The only evidence in the record indicates the intrusion on defendant's travel was minimal. From the initial meeting of the two vehicles to the discovery of the marijuana, the encounter took "less than two minutes." Moreover, when asked, "[H]ow long did you have the defendant stopped alongside the road before he gave permission for you to look in the trunk?" the agent responded, "Almost immediately, ... less than a minute." Nonetheless, defendant maintains the detention lasted longer than necessary to effectuate the purpose of the stop, citing Florida v. Royer, 460 U.S. 491, 500 (1983).
 
 
 15
 He argues the purpose of the stop was to investigate suspected alien smuggling, but that purpose was satisfied when the agents determined defendant's citizenship and looked into his car without discovering "anything suspicious." That argument overlooks the testimony of Agent Hernandez who, after seeing nothing in the passenger compartment, thought it possible people were concealed in the trunk. He immediately asked to look, was given permission, and the defendant blurted out his admission, all in quick succession.
 
 
 16
 By the evidence in the record, that transaction at most took less than a minute. Moreover, contrary to defendant's argument, the purpose of the investigation never altered, for from its inception it was concerned only with a suspicion the defendant was smuggling aliens. There was no point at which that purpose was satisfied until Mr. Cordova indicated he was transporting marijuana. We believe the search did not exceed the scope of the stop.
 
 
 17
 Finally, without recognition of our long-standing rule a district court's discretionary refusal to depart downward is not appealable, United States v. McHenry, 968 F.2d 1047, 1048 (10th Cir.1992), defendant urges the district court erred by refusing his request for a downward departure. The only exception to this rule is when the district court denies a downward departure on the mistaken notion it was without authority to depart. United States v. Slater, 971 F.2d 626, 634 (10th Cir.1992). That argument is not made here.
 
 
 18
 AFFIRMED.
 
 
 19
 SEYMOUR, Chief Judge, dissenting.
 
 
 20
 I respectfully dissent. Even though I accept the factual findings of the district court, I do not believe the evidence is sufficient to give rise to reasonable suspicion in this case. The majority, like the district court below, underemphasizes or ignores entirely certain facts which are extremely important to the disposition of this case. The district court's holding extends well beyond the permissible bounds of our reasonable suspicion jurisprudence.
 
 
 21
 The majority fails to recognize several important facts that suggest the lower court erred, as a matter of law, in finding reasonable suspicion. First, the road on which defendant was traveling "is the only paved road from the border [town of Columbus, New Mexico] to Deming, New Mexico, and [points] further north." Rec., vol. III, at 6-7 (emphasis added). The facts in no way suggest Mr. Cordova chose this route purposefully to avoid encountering agents. See United States v. Monsisvais, 907 F.2d 987, 990-91 (10th Cir.1990) (finding no reasonable suspicion and noting that "[f]or all the record reveals, this stretch of Highway 85 might be the sole artery connecting Truth or Consequences to northbound I-25"). When a certain stretch of road is the sole means of reasonable travel between two locations, any inferences of illegality to be drawn therefrom must be appropriately discounted, even if the road is "notorious" for smuggling. Neither the district court nor the majority considered this evidence.
 
 
 22
 Second, while the road may be "notorious" for smuggling and used more often by tourists than local residents at this time of day, neither the district court nor the majority acknowledge critical testimony from one of the agents that "it's not unusual " to see a local car on the road at 9:00 a.m. Rec., vol. III, at 28. Agent Hernandez testified that he knew Mr. Cordova was driving a local car. Id. at 20. This testimony establishes without a doubt that Mr. Cordova's car was part of the "legitimate traffic that might be expected to make use of the road at this time of day." Monsisvais, 907 F.2d at 990. The agents' own testimony simply "does not provide us a basis for concluding that a [local] vehicle's presence on Highway at [9:00 a.m.] is at all unusual, much less that it is suggestive of criminal conduct." Id. at 990-91.
 
 
 23
 Third, critical to the finding of reasonable suspicion below is the age of Mr. Cordova's vehicle, a 1978 two-door Pontiac. Apparently older cars are favored by smugglers because they are not as concerned about losing older cars in the event of government seizure. Rec., vol. III, at 8. However, it is an unpleasant reality of modern life that the less fortunate among us also favor older cars because that is what they can afford. This is not a case where the agents' suspicions were legitimately aroused by the size or shape of the vehicle in question. See, e.g., United States vs. Brignoni-Ponce, 422 U.S. 873, 885 (1975) (station wagon); cf. Monsisvais, 907 F.2d at 992 (no reasonable suspicion from pickup truck with camper shell "riding heavy"). Although older cars may be favored by smugglers, that in no way creates an inference that all, or even many, older cars are therefore driven by smugglers. I fear the likely results for an entire segment of our society if we legitimize stops based in large part on the age of a defendant's vehicle.
 
 
 24
 One additional important factor remains for our consideration. The majority affirms the ruling below based in part on the fact that the car appeared to be riding "significantly low to the ground." Rec., vol. III, at 10. The record reveals, however, that the district court gave this factor very little or no weight at all because of evidence suggesting that the ninety pound load of marijuana that Mr. Cordova was carrying would have lowered the back of the car approximately one inch. The court ruled from the bench that
 
 
 25
 Now, the officers thought the vehicle was riding low in back. Even disregarding that--and I will say the evidence is not clear on that point, because even with the flat tire, the vehicle, when weighted with the 90 pounds, had a little difference in height from the ground in the rear. I'll say it's not conclusive. There was enough there in and of itself. But with the other factors--the surprise and the appearance of being caught in something--the agents turned around and had the right to turn around and stop the car....
 
 
 26
 Id. at 57-58 (emphasis added).
 
 
 27
 The district court appears to hold that, even disregarding evidence that the car was riding low, the agents had reasonable suspicion to stop Mr. Cordova. Given the three factors I discussed above, the district court's ruling hinges almost entirely on the fact that Mr. Cordova appeared "surprised" when he saw the agents. Not only is such a judgment inherently subjective, see, e.g., United States v. Bloom, 975 F.2d 1447, 1458 (10th Cir.1992), overruled on other grounds by United States v. Little, 18 F.3d 1499 (10th Cir.1994) (en banc), it is unquestionably complicated by the fact that the agents made this observation while traveling in the opposite direction at 50 m.p.h. In any event, even accepting the factual findings of the district court in their entirety, I conclude the evidence is legally insufficient to give rise to reasonable suspicion of criminal activity.
 
 
 28
 The undisputed facts cast an ominous shadow on the ruling below. Under the court's reasoning, Border Patrol agents would have reasonable suspicion to stop any area resident driving an older model vehicle on Highway 11 at 9:00 a.m. if the driver expresses what might be considered a "surprised appearance" upon passing the agents at 50 m.p.h. while traveling in the opposite direction. Such a ruling bodes well only for those who can afford a Mercedes Benz or BMW and are fortunate enough not to be born with a surprised countenance. In sum, I do not believe the "specific and articulable facts, together with the rational inferences from those facts, ... reasonably warrant suspicion" that Mr. Cordova's car contained illegal aliens or contraband. Brignoni-Ponce, 422 U.S. at 884.
 
 
 29
 I conclude by noting that "not every suspicion that is 'articulable' is reasonable." Monsisvais, 907 F.2d at 992. The agents' own testimony in this case--that Highway 11 is the only paved road from Columbus to Deming, New Mexico, and that "it's not unusual" for local traffic to be on the road at 9:00 a.m.--critically undermines the reasonableness of their suspicions. Once the district court all but dismissed the "low riding" appearance of the car as a factor, the remaining evidence amounts to barely more than a surprised expression on Mr. Cordova's face. We have never held, and we should not hold today, that such meager evidence can give rise to reasonable suspicion. The district court's ruling on reasonable suspicion should be reversed.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. 294(a)
 
 
 [3]
 One officer testified they averaged about twenty alien smuggling cases per month in that area
 
 
 [4]
 The court noted "the evidence is not clear on that point," but even if that factor were disregarded, the circumstances were sufficient to establish reasonable suspicion